```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         SOUTH BEND DIVISION
```

BRIAN ROYER, et. al.            )
                                )
Plaintiffs,                     )
                                )
    vs.                         )   NO. 3:09-CV-112
                                )
USAA CASUALTY INSURANCE         )
COMPANY,                        )
                                )
Defendant.                      )

## OPINION AND ORDER

This matter is before the Court on: (1) Plaintiff's Motion for Partial Summary Judgment, filed on November 18, 2010; and (2) Defendant's Motion for Summary Judgment, filed on December 16, 2010. For the reasons set forth below Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. This case is **DISMISSED** and the Clerk is **ORDERED** to enter judgment in favor of Defendant and close this case.

BACKGROUND

On February 13, 2007, a fire burned down Brian and Stephanie Royer's home in Plymouth, Indiana. The Royers then filed a claim with their insurer, USAA Casualty Insurance Company ("USAA CIC"), to cover the losses of the fire. USAA CIC suspected fraud and

ultimately denied the claim.  Twenty-four months after the fire, the Royers filed suit alleging breach of contract under the Homeowner's Policy and bad-faith claims handling.  At issue is whether the insurance policy's one-year limitations period makes the Royers' claim untimely.

The parties have filed their respective motions for summary judgment, each stating that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

DISCUSSION

Summary Judgment Standard

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Interpretation of a written contract, including a contract of insurance, typically presents a question of law suitable for resolution on motions for summary judgment. *Erie Ins. Group, Alliance Environmental, Inc.*, 921 F.Supp. 537, 539 (S.D. Ind. 1996). "When the question presented is whether an insurance policy provides liability coverage for a particular claim or lawsuit, the central material facts are ordinarily the terms of the written contract and the contents of the plaintiff's allegations in the underlying litigation." *Id.(citations* omitted). Here, the facts are largely undisputed; instead, it is the legal conclusions to be drawn from the terms of the insurance contract as applied to the underlying lawsuit that is at issue.

Facts

The Royers' home, located at 109 Baker Street, Plymouth, Indiana, was damaged by fire on February 13, 2007. (Royer Aff. p. 1). The home was insured with a Homeowner's Policy ("Policy") issued by USAA CIC. (Cmplt Ex. A). The effective date of the Policy was April 1, 2006 through April 1, 2007. (CIC Motion, Ex. 2). The Policy included a one year limitations period, which provided:

**SECTION I - CONDITIONS**

    7.    **Suit Against Us.** No action can be brought against us unless you have:

        a.    given us notice of the loss,
        b.    complied with all other provisions, and
        c.    started the action within one year after

the date of the loss.

(Cmplt. Ex. A).

Soon after the fire, the Royers made a claim under the Policy to USAA CIC for the fire damage. (Royer Aff. p. 1). Two insurance adjusters were assigned the fire; one handled the dwelling and the other handled the contents. (Royer Aff. p. 1). While the claim was pending, the adjusters gave the Royers a $10,000 advance to take care of the family's immediate needs. (Royer Aff. p. 1).

USAA CIC had the fire investigated . USAA CIC suspected fraud early into the investigation, with preliminary indications that two separate and unrelated fires were the cause of the damage. (Royer Aff. p. 2; Ex. B). USAA CIC sent a reservation of rights letter to the Royers on March 2, 2007, which indicated the Policy might not provide coverage and reserving the right to deny the Royers claim pending an investigation. (Royer Aff. p. 2; Ex. A). USA CIC denied the Royers' claim under the Policy in a letter sent on October 31, 2007. (Royer Aff. p. 2; Ex. B).

USAA CIC then sent the Royers a letter on December 21, 2007 canceling the Policy effective January 25, 2008. (Royer Aff. p. 2; Ex. C). In the letter, USAA CIC stated:

> This is legal notice that we will cancel homeowners policy CIC 01444 89 67 90A effective 12:01 a.m. on January 25, 2008.
>
> The reason for cancellation is shown below:
>
> Our reason for this action is the substantial change in the risk insured against, as indicated by the circumstances of the loss of February 13, 2007.

> Specifically, our investigation found that you had intentionally caused the fire damage to your home.
>
> ***
>
> This notice supersedes any policy or declaration you received previously. We will not provide coverage after 12:01 a.m. on January 25, 2008.

(Royer Aff. Ex. C).

On February 12, 2009, almost two years to the day after the fire, the Royers filed a complaint suing USAA CIC for breach of the Policy and bad-faith claims handling. (DE # 45, p. 3; DE # 48, p. 3).

USAA CIC claims that the Royers filed this claim outside the one year period set out in the Policy. The Royers claim that the one year period is not controlling for three reasons. First, the Royers argue that the one year provision is ambiguous and, therefore, not enforceable against them. Second, the Royers argue that USAA CIC waived its right to enforce the one year provision because the December 21, 2007, letter superseded the Policy. And, third, the Royers contend that the newly enacted Indiana statute, Indiana Code section 27-1-13-17, prohibits the enforcement of the one year period contained in the Policy.


<u>The Suit Limitation Provision is Not Ambiguous</u>

The Royers assert that the suit limitation provision contained in the Policy is ambiguous and should be strictly construed against USAA CIC. Specifically, the Royers contend that the provision is ambiguous because the heading contains the word "suit" and the body

of the provision contains the word "action." The Royers argue an ambiguity exists because "action" and "suit" are different words and "action" has four different possible definitions, three of which have nothing to do with a lawsuit. While ambiguities in insurance contracts are construed against the insurer and in favor of the insured there is no ambiguity in the suit limitation provision at issue here.

The Indiana Supreme Court has spoken on the law regarding ambiguity in insurance contracts:

> Contracts of insurance are governed by the same rules of construction as other contracts. In the absence of ambiguity, their words are given their ordinary meaning. We interpret policy terms from the perspective of an ordinary policyholder of average intelligence. Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, we construe insurance policies strictly against the insurer. This is particularly the case where a policy excludes coverage. At the same time, interpretation should harmonize the policy's provisions rather than place its provisions in conflict.

*Bradshaw v. Chandler*, 916 N.E.2d 163, 166 (Ind. 2009).

Both sides have cited *Reviolitis v. State Farm Ins. Co.*, 2004 WL 1662287 (N.D. Ind. 2004), which contained a similar policy provision and used both the words "suit" and "action." The court in *Reviolitis* resolved the case in favor of the insurer and found the policy to be unambiguous. Not surprisingly, USAA CIC wishes this Court to follow the holding of *Reviolitis* while the Royers seek to distinguish the case. But regardless of this Court's interpretation of *Reviolitis* , the provision itself proves to be

unambiguous and not susceptible to differing interpretations of reasonably intelligent people.

The heading of the Policy provision reads "Suit Against Us" and subsequently instead of "suit" the word "action" is used within the body of the provision. "Suit" in the Ninth Edition of *Black's Law Dictionary* is defined: "Any proceeding by a party or parties against another in a court of law." BLACK'S LAW DICTIONARY, 1572 (9th Ed. 2009). It then references the reader to "See ACTION (4)." *Id.* "Action" then is given four different definitions in the dictionary with the fourth being, "4. A civil or criminal judicial proceeding." This definition is followed shortly thereafter by a notation that reads in part "[t]he terms 'action' and 'suit' are nearly if not quite synonymous.'" *Id.* at 32. So, although there are different definitions for "action" it is clear that for the purpose of the provision that a reasonably intelligent person would understand the word "action" is a reference back to the word "suit" in the heading and the two are synonymous.

Because the suit limitation provision is clear and unambiguous it is given its plain and ordinary meaning. The Royers failed to meet the conditions listed in the provision by waiting to file their "action" against USAA CIC more than a year after the date of the loss.

## USAA CIC Did Not Waive Its Right to Rely on the Suit Limitation Provision

The Royers claim that, even if the provision is clear, USAA CIC's right to rely on the suit limitation provision in the Policy has been waived. In support of the waiver claim, the Royers point out that they gave USAA CIC prompt notice of their loss and cooperated with USAA CIC's investigation from February 13, 2007 through August 27, 2007. In addition, the Royers point to USAA CIC's December 21, 2007, cancellation letter which stated that the letter "superseded" any previous policy or declaration.

Indiana law does not favor provisions in insurance contracts which limit the time the insured has to commence suit, but if a reasonable time is afforded the insured, the contractual time limitation is valid. *Summers v. Auto-Owners Ins. Co.*, 719 N.E.2d 412, 414 (Ind. App. 1999); *Troxell v. American States Ins. Co.*, 596 N.E.2d 921, 923 (Ind. App. 1992); *Schafer v. Buckeye Union Ins. Co.*, 381 N.E.2d 519, 522 (Ind. App. 1978). There are policy reasons for allowing these limitations, but also policy reasons why these limitations are not favored in Indiana law. "[T]hese limitations protect insurers from policy holders who voice no claim until the year has long since expired, promote early notification while evidence is available, and provide carriers with a basis for forming business judgments concerning claim reserves and premium rates." *Summers*, 719 N.E.2d at 414. However, due to policy concerns in favor of the insured which may be abridged by these

limitations, such clauses may be "easily waived." *Troxell*, 596 N.E.2d at 923; *Schafer*, 381 N.E.2d at 522.

Waiver by the insurer of contractual limitations may either be express or implied. *Summers*, 719 N.E.2d at 414. USAA CIC has not expressly waived the one year limitations period. Instead, the Royers claim USAA CIC waived the one year period by its actions. Implied waiver results when an insurer's actions either induce the insured to not file suit until after the limitations period or cause the insured to reasonably believe the limitation period will not be strictly enforced. *Id*. Implied waiver has been found when an insurer is given prompt notice of the loss but waits to deny coverage until after the expiration of the suit limitation period. *Huff v. Travelers Indemnity Co.*, 363 N.E.2d 985 (Ind. 1977). The law also finds an implied waiver when an insurer "does not deny coverage or liability and proceeds in negotiations with the insured to settle the claim . . . unless and until the insurer puts the insured on notice that litigation is necessary if he desires to pursue the claim further." *Schafer*, 381 N.E.2d at 523. In both instances it is clear that an insured would be lulled into believing the limitations period would not be enforced either because of the delay of the insurer or the insurer's seeming willingness to settle the claim. That is not what the undisputed facts indicate in this case.

The use of the word "supersede" in the termination letter did not act to annul the insurance contract. Indeed, the December

letter explained that the insurance policy would continue to be in effect until January 2008.  Thus, Royers argument that the word "supersede" in the December letter meant USAA CIC was essentially annulling or voiding the policy so that it never existed and USAA CIC could not rely on the suit limitation provision is not persuasive.  Indeed, if the Royers' interpretation were correct, there would be no policy from which to sue and collect under.  Not only does the word "supersede" fail to annul the insurance contract, but its use does not otherwise show that USAA CIC waived its rights under the Policy.  The parties were still under the obligations of the Policy prior to the cancellation and the cancellation letter only served to *supersede* any policy or declarations previously received.

The Royers "delay" argument is no more convincing. Although USAA CIC did not deny the claim until approximately eight months after the notice of loss, the undisputed facts show no evidence USAA CIC's actions would have created a "reasonable belief" that the suit limitations period would not be strictly enforced.  USAA CIC sent the Royers a reservation of rights letter in March 2007 pending an investigation.  Although the denial of the claim did not come until October 2007, the Royers still had four months under the one year suit limitation file suit.  The Royers did not file suit within that four month period.  Instead, they waited until nearly two full years after the fire to file suit.

Because the facts are undisputed by both parties and without evidence from the Royers that USAA CIC acted in some way sufficient to create a reasonable belief the limitations period would not be enforced it is clear that USAA CIC did not waive its rights to rely on the suit limitation provision.

Ind. Code § 27-1-13-17 Does Not Apply
<u>to the Suit Limitation Provision at Issue in this Case</u>

The Royers claim that Indiana Code section 27-1-13-17 applies to the insurance contract at issue in this case and that its application overrules the one-year suit limitation provision in the Policy.  Indiana Code section 27-1-13-17 was enacted on July 1, 2007, and provides:

> Certain policies insuring against loss or damage to real or personal property may not be issued if policy limits right to bring action against insurer to period of less than two years.
>
> (a) This section applies to a policy of insurance that:
>
> (1) covers first party loss to property located in Indiana; and
>
> (2) insures against loss or damage to:
>
> > (A) real property consisting of not more than four (4) residential units, one (1) of which is the principal place of residence of the named insured; or
> >
> > (B)  personal property in which the named insured has an insurable interest and that is used within a residential dwelling for personal, family, or household purposes.

> (b) A policy of insurance described in subsection (a) may not be issued, renewed, or delivered to any person in Indiana if the policy limits a policyholder's right to bring an action against an insurer to a period of less than two (2) years from the date of loss.

Ind. Code § 27-1-13-17.

This statute sets out the minimum suit limitation in an insurance policy to not less than two years from the date of the loss. The parties acknowledge that section 27-1-13-17 was enacted after the Policy was entered into between the parties. So, the question is whether this statute controls the Policy, which was entered into on April 1, 2006, before the effective date of the statute which was first enacted July 1, 2007.

Statutes are to be read as a whole and each word is presumed to have meaning. *Hall Drive Ins, Inc. v. City of Fort Wayne*, 773 N.E.2d 255, 257 (Ind. 2002); *Spaulding v. International Bakers Services, Inc.*, 550 N.E.2d 307, 309 (Ind. 1990). "Unless there are strong and compelling reasons, statutes will normally be given prospective application," and retroactive application is the exception. *Metro Holding Co. v. Mitchell*, 589 N.E.2d 217, 219 (Ind. 1992) *quoting Gosnell v. Indiana Soft Water Services*, 503 N.E.2d 879, 880 (Ind. 1987); *The Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 777 F.Supp. 713 (S.D. Ind. 1991). Finally, the Indiana Constitution Article I, § 24 provides, "[n]o ex post facto law, or law impairing the obligation of contracts, shall ever be passed." These provisions are not an absolute bar but, to meet the exception

the legislation impairing contractual obligations, must be necessary and reasonable given the circumstances. *Wencke v. City of Indianapolis*, 429 N.E.2d 295, 298 (Ind. App. 1981).

Realizing that retroactive applications of statutes are not favored, the Royers argue that applying the statute to the Policy amounts only to a prospective application. In support of their argument that section 27-1-13-17 is applied only prospectively, the Royers argue that the one year period in the Policy is remedial and that the legislature may alter remedies at any time. *Templeton Coal Co. v. Shalala*, 855 F.Supp. 990, 1001(S.D. Ind. 1993). It is true that "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Eco Manufacturing LLC v. Honeywell Int'l, Inc.*, 357 F.3d 649, 652 (7th Cir. 2004)(quotation omitted). For example, statutes that extend the time to file certain claims do not impair existing contractual obligations and, therefore, they are deemed to be applied prospectively. *Robert v. Martz*, 18 N.E. 381, 383 (Ind. 1888). However, when the "application of a statute to a contract entered into before the effective date of that statute can impair contractual obligations" of the parties then it is considered retroactive. *Wencke*, 429 N.E.2d at 298.

The suit limitation provision in the Policy in not merely remedial. Instead, it is a part of the contract between the Royers and USAA CIC. The application of section 27-1-13-17 to the contract would impair the contractual obligations of the Royers and

impair the contractual rights held by USAA CIC.  Such an impact would require a retroactive application of section 27-1-13-17[1], which this Court will not apply.  Accordingly, this Court finds that section 27-1-13-17 is inapplicable.

CONCLUSION

For the reasons set forth above Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**. This case is **DISMISSED** and the Clerk is **ORDERED** to enter judgment in favor of Defendant and close this case.

**DATED:  March 11, 2011**            /s/RUDY LOZANO, Judge
                                      **United States District Court**

---

[1] While exceptions to the general rule against retroactive application exist, *Wencke*, 429 N.E.2d at 298, the Royers do not argue that any of those exceptions are present in this case.